IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | | |
|---|---|---|
| CHINA POWER EQUIPMENT, INC., | § | |
| AN SEN (XI'AN) POWER SCIENCE & | § | |
| TECHNOLOGY CO., LTD., AND | § | |
| CONCORDE EQUITY II, LLC | § | |
| 3420 Dalworth Street | § | |
| Arlington, Texas 76011 | § | |
| | § | |
|     Plaintiffs, | § | CASE NO.:_____._____ |
| | § | |
| V. | § | |
| | § | |
| YONGZING SONG; | § | |
| Yongle Industry Zone | § | |
| Jingyang Industry Concentration Area | § | |
| Shaanxi, P.R. China 713702 | § | |
| | § | |
| XI'AN AMORPHOUS ALLOY ZHONGXI | § | |
| TRANSFORMER CO., LTD.; | § | |
| Yongzing Song | § | |
| Yongle Industry Zone | § | |
| Jingyang Industry Concentration Area | § | |
| Shaanxi, P.R. China 713702 | § | |
| | § | |
| ELAINE ZHAO; | § | |
| 620 Brea Canyon Road | § | |
| Walnut, CA 91789 | § | |
| | § | |
| MICHAEL S. SEGAL; | § | |
| 11 East 86th Street #19B | § | |
| New York, New York, 10028 | § | |
| | § | |
| YARONG FENG; | § | |
| Yongle Industry Zone | § | |
| Jingyang Industry Concentration Area | § | |
| Shaanxi, P.R. China 713702 | § | |
| | § | |

1

**DANGSHENG CHEN;**                                §
**Yongle Industry Zone**                           §
**Jingyang Industry Concentration Area**           §
**Shaanxi, P.R. China 713702**                     §
                                                   §
**SIU KUEN LEUNG;**                                §
**Yongle Industry Zone**                           §
**Jingyang Industry Concentration Area**           §
**Shaanxi, P.R. China 713702**                     §
                                                   §
**NICOLE CHEN;**                                   §
**Yongle Industry Zone**                           §
**Jingyang Industry Concentration Area**           §
**Shaanxi, P.R. China 713702**                     §
                                                   §
**GUOAN ZHANG;**                                   §
**Yongle Industry Zone**                           §
**Jingyang Industry Concentration Area**           §
**Shaanxi, P.R. China 713702**                     §
                                                   §
**JUNYI LI;**                                      §
**Yongle Industry Zone**                           §
**Jingyang Industry Concentration Area**           §
**Shaanxi, P.R. China 713702**                     §
                                                   §
**BEIJING DHH LAW FIRM;**                          §
**1150 Connecticut Ave., Suite 900**               §
**Washington, DC 20036**                           §
                                                   §
**CHILD, VAN WAGONER &**                           §
**BRADSHAW, PPLC;**                                §
**Russ Bradshaw**                                  §
**5296 Commerce Dr., Ste. 300**                    §
**Salt Lake City, UT 84107**                       §
                                                   §
**MAZARS CPA LIMITED;**                            §
**Russ Bradshaw**                                  §
**5296 Commerce Dr., Ste. 300**                    §
**Salt Lake City, UT 84107**                       §
                                                   §

2

| | |
|---|---|
| **DARREN OFSINK;** | § |
| **2375 Lindenmere Dr.** | § |
| **Merrick, NY 11566** | § |
| | § |
| **CHRISTENSEN, IN ITS ASSUMED OR** | § |
| **COMMON NAME;** | § |
| **Linda Tsai Bergkamp or Patty Bruner** | § |
| **7975 North Hayden Road, Suite C-200** | § |
| **Scottsdale, AZ 85258** | § |
| | § |
| **Defendants.** | § |

## COMPLAINT

NOW COME **China Power Equipment, Inc., An Sen (Xi'An) Power Science & Technology Co., Ltd.,** and **Concorde Equity II, LLC,** Plaintiffs herein, and file this Complaint against Defendants **Yongzing Song, Zi'an Amorphous Alloy Zhongxi Transformer Co., Ltd., Elaine Zhao, Michael S. Segal, Yarong Feng, Dangsheng Chen, Siu Kuen Leung, Nicole Chen, Guoan Zhang, Junyi Li, Beijing DHH Law Firm, Child, Van Wagoner & Bradshaw, PPLC, Mazars CPA Limited,  Darren Ofsink, and Christensen, in its assumed or common name,** and for cause of action would respectfully show this Court as follows:

## PARTIES

1.      Plaintiff, **China Power Equipment, Inc.** ("China Power" or the "Company") is a Maryland Corporation formed on May 17, 2006.  The principal place of business for China Power is in Westlake, Texas.

2.      Plaintiff, **An Sen (Xi'an) Power Science and Technology Co., Ltd.** ("An Sen") is a Chinese entity and a wholly owned subsidiary of China Power.  The principal place of business for An Sen is in Westlake, Texas.

3.      Plaintiff, **Concorde Equity II, LLC** ("Concorde") is a Delaware LLC and an owner of 4,078,717 shares of common stock in China Power and 4,060,000 in preferred stock in China Power.  The principal place of business for Concorde is Westlake, Texas.

4.      **Yongzing Song**, Defendant, was Chairman of the Board of Directors of China Power and President and CEO of both China Power and An Sen.  Mr. Song is or has been a member of the board of directors, CEO and legal representative of **Zi'an Amorphous Alloy Zhongxi Transformer Co., Ltd.**  Mr. Song may be served with process at Yongle Industry Zone, Jingyang Industry Concentration Area, Shaanxi, P.R. China 713702.

5.      **Zi'an Amorphous Alloy Zhongxi Transformer Co., Ltd.** ("Zhongxi") is a Chinese entity with its principal place of business in Zi'an, China.  Zhongxi may be served with process by serving its legal representative Yongzing Song at Yongle Industry Zone, Jingyang Industry Concentration Area, Shaanxi, P.R. China 713702.

6.      **Elaine Zhao** was CFO of China Power from June 1, 2008 until March 27, 2014 and may be served with process at 620 Brea Canyon Road, Walnut, CA 91789.

7.      **Michael S. Segal** is a resident of New York and was a member of the board of directors of China Power until June 9, 2015.  He was also President of China Power from

4

June 2006 to November 2007. He may be served with process at 11 East 86th Street #19B, New York, New York, 10028.

8.     **Yarong Feng** was a member of the board of directors of China Power, An Sen, and Zhongxi, as well as CFO of Zhongxi since June of 2007 and may be served with service of process at Yongle Industry Zone, Jingyang Industry Concentration Area, Shaanxi, P.R. China 713702.

9.     **Dangsheng Chen** was a member of the board of directors of China Power and may be served with process at Yongle Industry Zone, Jingyang Industry Concentration Area, Shaanxi, P.R. China 713702.

10.     **Siu Kuen Leung** was a member of the board of directors of China Power and may be served with process at Yongle Industry Zone, Jingyang Industry Concentration Area, Shaanxi, P.R. China 713702.

11.     **Nicole Chen** was Vice President-Finance & Head-Investor Relations for China Power and may be served with process by serving her at Yongle Industry Zone, Jingyang Industry Concentration Area, Shaanxi, P.R. China 713702.

12.     **Guoan Zhang** was Vice General Manager of China Power, An Sen and Zhongxi, as well as a director of Zhongxi and may be served with process by serving him at Yongle Industry Zone, Jingyang Industry Concentration Area, Shaanxi, P.R. China 713702.

13.     **Junyi Li** was a member of the board of directors of China Power and may be served with process at Yongle Industry Zone, Jingyang Industry Concentration Area, Shaanxi, P.R. China 713702.

14.     Defendants Yongzing Song, Elaine Zhao, Michael S. Segal, Yarong Feng, Dangsheng Chen, Siu Kuen Leung, Nicole Chen, Guoan Zhang, and Junyi Li are hereinafter referred to as the "Officer and Director Defendants." The Officer and Director Defendants, because of their positions with China Power, An Sen, and Zhongxi, possessed the power and authority to control the contents of China Power's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material non-public information available to them but not to the public, the Officer and Director Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading. The Officer and Director Defendants are liable for the false statements pleaded herein.

15.     **Beijing DHH Law Firm** ("DHH Firm") is a law firm licensed to do business in the District of Columbia, which may be served with process by serving its registered agent for service, Registered Agents, Inc., at 1150 Connecticut Ave., Suite 900, Washington, DC 20036.

16.     **Child, Van Wagoner & Bradshaw, PPLC** ("CVB") is a CPA firm with its principal place of business in Salt Lake City, Utah and may be served with process by

serving it registered agent Russ Bradshaw, 5296 Commerce Dr., Ste. 300, Salt Lake City, UT 84107.

17.     **Mazars CPA Limited** ("Mazars") is a Hong Kong CPA firm which may be served with process by serving its managing partner, Russ Bradshaw, 5296 Commerce Dr., Ste. 300, Salt Lake City, UT 84107.

18.     **Darren Ofsink** is a resident and citizen of New York.  He may be served at his home at 2375 Lindenmere Dr., Merrick, NY 11566.  On information and belief, Ofsink advised China Power with respect to the sale of its securities and prepared legal papers necessary for China Power to complete the sale of the securities, including offering documents, risk disclosures, and subscription agreements.  Ofsink prepared these documents with knowledge that China Power would sell the subject securities. The China Power securities could not have been sold without the legal services that Ofsink provided.

19.     **Christensen** is apparently a Hong Kong entity that may be served  through its officers Linda Tsai Bergkamp or Patty Bruner located at 7975 North Hayden Road, Suite C-200 Scottsdale, AZ 85258.  Plaintiff sues Christensen in assumed or common name and intends to sue the entity that was involved in the securities transactions that are the subject of this lawsuit.  Christensen boasts on its website that "it brings companies to market" and provides "capital markets transaction support."  Christensen assisted in marketing the securities that are at issue in this lawsuit.

**JURISDICTION AND VENUE**

20.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332, as there is complete diversity between China Power, a Maryland Corporation, and Concorde, a Delaware LLC, on the one hand, and Defendants, none of which are Maryland or Delaware entities or citizens or residents, on the other hand.  Furthermore, the amount in controversy exceeds $75,000.

21.     Venue is proper in the District of Maryland under 28 U.S.C. §1391(b) as a substantial part of the events giving rise to the claim occurred in the District of Maryland.

**FACTS**

22.     Zhongxi is a Chinese company that purportedly manufactures transformer cores and transformers.  Zhongxi is owned by, run by and/or controlled by Defendants Yongzing Song, Yarong Feng, Dangsheng Chen and Guoan Zhang.

23.     On May 17, 2006, Defendants Yongzing Song, Yarong Feng, Dangsheng Chen and/or Guoan Zhang created China Power.  On November 3, 2006, said Defendants created An Sen, a Chinese limited liability company, as a wholly owned subsidiary of China Power.  The purpose of creating both of these entities was for Zhongxi to go "public" to obtain US investor money via fraud.

24.     On November 8, 2006, An Sen entered into an allegedly irrevocable management entrustment agreement with Zhongxi pursuant to which An Sen had the right to manage and control Zhongxi and receive its financial benefits.

8

25.    The management entrustment agreement was evidently amended and restated on April 24, 2008, and possibly on October 22, 2008.  The April 24, 2008 version of the agreement stated that An Sen shall be in charge of all aspects of Zhongxi's operations, An Sen shall nominate and replace the members of Zhongxi's board of directors, An Sen shall engage Zhongxi's management staff and decide their compensation, and An Sen shall manage and control all the funds of Zhongxi.  The agreement further provides that the accounts of Zhongxi shall be managed and decided by An Sen, the seals and signatures for accounts shall be the seals and signatures of the personnel appointed by An Sen, and all the matters of Zhongxi (including financial management, day-to-day operation, external contract execution and performance, tax filing and payment, change of rights and personnel) shall be controlled and managed by An Sen.

26.    The management entrustment agreement also stated that Zhongxi shall pay its profit to An Sen.  It further stated that An Sen shall have the right to dispose of all the assets of Zhongxi without prior consent and that An Sen shall be entitled to all of Zhongxi's income.   The management entrustment agreement was supposed to be irrevocable.

27.    The DHH firm was retained by China Power and provided China Power with an opinion that the management entrustment agreement was enforceable by China Power.   This opinion was almost certainly false and the DHH Firm knew or should have known it.

9

28.     In June 2006, Michael S. Segal, a United States Citizen and resident was hired as President of China Power.   He was also elected as a member of the Board of Directors and he remained a member of the board until he was ousted in June 2015.   On June 1, 2008, Defendant Elaine Zhao, a United States citizen and resident, was hired as CFO of China Power.   She remained in this role until March 27, 2014, when she purportedly resigned.

29.     Between February 13, 2007 and May 30, 2007, China Power raised $925,000 in a private placement of its Series A Convertible Preferred Stock.

30.     On or about November 7, 2008, China Power issued an initial public offering ("IPO") of 726,183 shares of its common stock.   The prospectus associated with this IPO stated that, pursuant to the management entrustment agreement, China Power, through An Sen:  a) controls the management and operations of Zhongxi; and  b) "[h]olds from 100% of the shareholders of Zhongxi rights as equity holders of Zhongxi, including the right to vote as if it holds 100% of the common stock of Zhongxi on all matters that are brought before Zhongxi's shareholders, the right to acquire and dispose of assets and all other rights other than the right to dispose of the shares, giving it functional control over Zhongxi." These same or similar statements were contained in subsequent quarterly and annual filings with the SEC by Defendants.

31.     The prospectus stated that the management entrustment agreement was irrevocable and that Zhongxi was prohibited from terminating the management entrustment agreement.   The prospectus stated that China Power and An Sen would act as a holding

company and management company for Zhongxi. Plaintiffs state that these representations were false. The same or similar statements were contained in subsequent quarterly and annual filings with the SEC by Defendants.

32.    The prospectus stated that China Power had $9,327,153 in total assets, and only $3,366,922 in liabilities. The financials shown in the prospectus were the consolidated financials of Zhongxi, China Power and An Sen. Plaintiffs state that these representations as to the financial condition of the three entities were false.

33.    The prospectus stated that "Our counsel, Guzov Ofsink, LLC, located at 600 Madison Avenue, 14th Floor, New York, New York 10022, is passing upon the validity of the issuance of the common stock that we are offering under this prospectus." Ofsink closed the transaction and, upon information and belief, Ofsink assisted in the preparation of the prospectus and closing documents, which he knew or should have known, contained false and misleading statements about the purpose of the IPO, as well as false and misleading statements about the financial condition of China Power, An Sen, and Zhongxi. Ofsink lent his status and reputation to the prospectus to give the appearance of validity to the sale. Ofsink knew or should have known of the aforementioned false representations contained in the prospectus, as well as the fraudulent purpose to which the proceeds were going to be put. In addition, the involvement of legal counsel, like Ofsink, gave the offering clout and China Power the appearance of legitimacy.

34.    CVB is the accounting/audit firm that purportedly verified the assets of China Power and determined it was appropriate and proper to show the alleged assets of Zhongxi

11

as assets of China Power.  Upon information and belief, China Power and Zhongxi did not have the assets described in the prospectus.  Defendant Elaine Zhao was CFO of China Power at the time the prospectus, and upon information and belief, reviewed and approved the prospectus.  Ms. Zhao also signed all quarterly and annual reports filed with the SEC.

35.     In November 2009, China Power raised $5,000,000 by issuing and selling preferred stock.  The proceeds were supposed to be used to construct a new plant in the Jingyang Yongle Industrial Zone.  Upon information and belief, there was never any intention to build such a plant and a new plant was never constructed.  Google earth searches do not show any plants at any of the addresses cited by Defendants in public filings as the locations for China Power/An Sen/ Zhongxi's facilities.  Upon information and belief, the Officer and Director Defendants absconded with the funds raised by the issuance.  Furthermore, the $5,000,000 raised by way of the sale of the preferred stock was China Power's money, not Zhongxi's, and thus even if the money was used by Zhongxi to build a plant, the money was still stolen from China Power.

36.     Ofsink was involved in the transaction and, upon information and belief, prepared the necessary legal paperwork and provided legal advice to the Officer and Director Defendants.  The involvement of legal counsel gave the offering the clout and the appearance of legitimacy.  Ofsink knew, or should have known of the illicit purpose of the Officer and Director Defendants, and Ofsink materially aided them in their scheme.  Christensen also aided and materially participated in the scheme by touting and

marketing the offering. Indeed, potential investors were specifically directed to contact Christensen for more information about the offering and the company.

37.     The Officer and Director Defendants retained Ofsink and Christensen to assist them in their fraud and theft. Ofsink closed the transaction and, upon information and belief, assisted in the preparation of the transaction documents, which he knew or should have known, contained false and misleading statements about the purpose to which the proceeds were to be used, among other things. Christensen touted and marketed the shares to investors and both Ofsink and Christensen used their reputation to give the appearance of validity to the sale and that its purpose was legitimate.

38.     Defendants caused China Power to file quarterly and annual reports with the Securities and Exchange Commission ("SEC") between the time of the IPO and September 2013, when China Power filed its last quarterly report. These reports all reiterated the representation that the management entrustment agreement was irrevocable and that Zhongxi was prohibited from terminating the management entrustment agreement. These reports all represented the alleged assets of Zhongxi as the assets of China Power. These representations were false due to the virtually certain unenforceability of the management entrustment agreement.  These reports all falsely represented the financial condition and assets of China Power.  The reports at issue are set forth below:

- March 30, 2010, Annual Report (Form 10-K)

- May 17, 2010, Quarterly Report (Form 10-Q)

- August 16, 2010,  Quarterly Report (Form 10-Q)

13

- November 15, 2010, Quarterly Report (Form 10-Q)

- March 31, 2011, Quarterly Report (Form 10-K)

- May 16, 2011, Quarter Report (Form 10-Q)

- August 15, 2011, Quarterly Report (Form 10-Q)

- November 14, 2011 Quarter Report  (Form 10-Q)

- March 28, 2012, Annual Report (Form 10-K)

- May 14, 2012 Quarterly Report (Form 10-Q)

- August 14, 2012, Quarterly Report (Form 10-Q)

- November 14, 2012 Quarterly Report  (Form 10-Q)

- April 1, 2013, Annual Report (Form 10-K)

- May 15, 2013, Quarterly Report (Form 10-Q)

- August 12, 2013, Quarterly Report (Form 10-Q)

- November 14, 2013, Quarterly Report (Form 10-Q)

39.     The November 14, 2013 Quarterly Report filed by China Power stated that, as of September 30, 2013, China Power had $51,331,703 in total assets and only $4,533,843 in liabilities.  Starting in at least 2010, the financials of China Power were audited by Mazars. The annual reports for China Power for 2010, 2011 and 2012 contained the following certification/verification by Mazars:  "We have audited the accompanying consolidated balance sheet of China Power Equipment, Inc. and its subsidiary and contractually controlled entity ("the Company") as of [date], and the related consolidated statements of income, stockholders' equity and cash flows for the year then ended. These consolidated

14

financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these consolidated financial statements based on our audits. We conducted our audits in accordance with the standards of the Public Company Accounting Oversight Board (United States). Those standards require that we plan and perform the audits to obtain reasonable assurance about whether the consolidated financial statements are free of material misstatement. The Company is not required to have, nor were we engaged to perform, an audit of its internal control over financial reporting. Our audits included consideration of internal control over financial reporting as a basis for designing auditing procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control over financial reporting. Accordingly, we express no such opinion. Our audits also included examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management and evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion. In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of the Company as of [date], and the consolidated results of its operations and cash flows for the year then ended in conformity with accounting principles generally accepted in the United States of America." This certification/verification was false. Upon information and belief, Mazars never performed an audit of China Power that met applicable standards. The audited financial

statements were a material part of the information made available to investors and the existence of an auditor gave China Power clout.

40.     From 2012 through 2015, Concorde purchased 4,078,717 shares of common stock in China Power and 4,060,000 in preferred stock in China Power.  In doing so, Concorde relied upon the representations and statements above about the assets and financial condition of China Power and the permanent and enforceable nature of the management entrustment agreement and the purpose and use of the monies raised.

41.     On March 28, 2014, Defendants caused China Power to issue a press release stating that China Power was suspending its reporting obligations under Section 15(d) of the Securities Exchange Act of 1934.  Thereafter, the purported board of directors and executives of China Power would not respond to inquiries made by Concorde.  Concorde requested that China Power hold a shareholders' meeting, which was ignored.  Concorde obtained a court order from the Circuit Court for Montgomery County, Maryland, in cause number 398823, requiring a shareholders' meeting take place on June 9, 2015.  This court order was served on China Power.

42.     Concorde appeared for the shareholders' meeting on June 9, 2015, and no one from China Power showed.  Concorde proceeded with the meeting as the only shareholder in attendance.  A new board of directors was elected consisting of Robert E. Fitzgerald, Julie Fitzgerald, Kathy Kindle, John Wiltgen and Gordon Poole.  The new board elected Robert E. Fitzgerald as the new President and Chairman of China Power.  These actions were affirmed by the Maryland Circuit Court via order dated June 30, 2015.

43.     Thereafter, Mr. Fitzgerald, the new President and Chairman of China Power, sent a letter to Defendant Song and the board of directors of China Power, An Sen and Zhongxi notifying them, among other things, that they are being immediately removed from their positions related to said entities and demanding that they turn over all property of said entities to China Power, as controlled by the new board of directors and executives.

44.     Mr. Fitzgerald received no response to the demand letter.

45.     After becoming Chairman of China Power's board, Mr. Fitzgerald has attempted to assess China Power's assets.  He has been unable to locate any assets of China Power and believes that they have been stolen and/or never existed.

## CLAIMS AGAINST THE OFFICER AND DIRECTOR DEFENDANTS

### COUNT I:  BREACH OF FIDUCIARY DUTY

**(China Power and An Sen against the Officer and Director Defendants)**

46.     Plaintiffs incorporate ¶¶ 1-45 by reference.

47.     By virtue of their positions as directors, officers and managers at China Power and/or An Sen, each of the Officer and Director Defendants owed a fiduciary duty to China Power and/or An Sen.  Pursuant to Maryland Corporations and Associations Law, Section 2-405(a), the Officer and Director Defendants who served as directors of China Power and An Sen specifically owed fiduciary duties (1) of good faith; (2) to act in a manner reasonably believed to be in the companies' best interest; and (3) to act with ordinary care.

48.     Each of the Officer and Director Defendants breached their fiduciary duties in the following ways:

- Causing China Power to issue false and misleading financial reports that misrepresented China Power's, An Sen's, and Zhongxi's financial condition, including available assets.

- Causing China Power (through An Sen) to enter into the management entrustment agreement with Zhongxi even though they knew it was unenforceable and was nothing more than a sham.

- Absconding with Zhongxi's assets which were, in effect, China Power's assets.

- Causing China Power to "go dark" on its SEC reporting obligations on March 28, 2014.

- Failing to respond to shareholder inquiries made by Concorde and failing to hold a shareholders' meeting.

49. As a result of these breaches of fiduciary duty, China Power and An Sen were damaged.

50. Because the Officer and Director Defendants breached their fiduciary duty, they should be required to disgorge any and all fees, monies, salaries, or bonuses that they collected or received from China Power, An Sen or Zhongxi.

51. Plaintiff China Power hereby seeks all assets, including all assets reported in its financial reports, of which it has been deprived as a result of the Officer and Defendants' wrongful conduct.

52.   Because the conduct of the Officer and Director Defendants was intentional, reckless, committed with malice or was grossly negligent, Plaintiffs also sue for exemplary and punitive damages.

## COUNT II:  THEFT

### (China Power and An Sen against the Officer and Director Defendants)

53.   Plaintiffs incorporate ¶¶ 1-52 by reference.

54.   The Officer and Director Defendants have stolen and/or converted for their own personal use all of the assets of China Power by misappropriating the assets of Zhongxi, which belong to China Power and An Sen.  Upon information and belief, the Officer and Director Defendants have moved all assets of China Power and An Sen to China, where they are not recoverable.  They did so with the intent of misappropriating China Power's and An Sens' assets.

55.   Plaintiff China Power hereby seeks all assets, including all assets reported in its financial reports, of which it has been deprived as a result of the Officer and Defendants' wrongful conduct.

56.   Because the conduct of the Officer and Director was intentional, reckless, committed with malice or was grossly negligent, Plaintiffs also sue for exemplary and punitive damages.

## COUNT III: SECURITIES FRAUD FOR VIOLATION OF § 10(B) OF THE 1934 ACT AND RULE 10B-5

### (Concorde against the Officer and Director Defendants)

57.   Plaintiffs incorporate ¶¶ 1-56 by reference.

58.     During the time Concorde was purchasing securities, the Officer and Director Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. The statements in the SEC filings listed above with respect to China Power and An Sen's assets were false, the statements that the management entrustment agreement was irrevocable was almost certainly false and the statements that it was appropriate to consolidate the financials of China Power, An Sen and Zhongxi were false.

59.     The Officer and Director Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

     (a)     employed devices, schemes and artifices to defraud;

     (b)     made untrue statements of material facts or omitted to the state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

     (c)     engaged in acts, practices and a course of business that operated as a fraud or deceit upon Concorde in connection with its purchases of China Power common and preferred stock.

60.     Concorde has suffered damages in that, in reliance on the integrity of the market, it paid artificially inflated prices for China Power common and preferred stock. Concorde would not have purchased the stock at the prices it paid, or at all, if it had been aware that the market price had been artificially and falsely inflated by the Officer and Director Defendants' misleading statements.

61.     Because the conduct of the Officer and Director was intentional, reckless, committed with malice or was grossly negligent, Plaintiffs also sue for exemplary and punitive damages.

## COUNT IV: VIOLATION OF § 20(A) OF THE 1934 ACT

### (Concorde against the Officer and Director Defendants)

62.     Plaintiffs incorporate ¶¶ 1-61 by reference

63.     The Officer and Director Defendants acted as controlling persons of China Power within the meaning of §20(a) of the 1934 Act.  By virtue of their positions with the company, and ownership of China Power stock, the Officer and Director Defendants had the power and authority to cause China Power to engage in the wrongful conduct complained of herein.  By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

64.     Because the conduct of the Officer and Director was intentional, reckless, committed with malice or was grossly negligent, Plaintiffs also sue for exemplary and punitive damages.

## CLAIMS AGAINST THE DHH FIRM

## COUNT V:  NEGLIGENCE/MALPRACTICE

### (China Power and An Sen against the DHH Firm)

65.     Plaintiffs incorporate ¶¶ 1-64 by reference.

66.     China Power and An Sen retained the DHH Firm to analyze the enforceability of the management entrust agreement.  The DHH Firm provided China

21

Power and An Sen with an opinion that the management entrustment agreement was enforceable by China Power.   This opinion was almost certainly false and the DHH Firm knew or should have known it.

67.    The DHH Firm was negligent, failed to act as a reasonably prudent law firm, and violated the applicable standard of care when it provided the opinion that the management entrustment agreement was enforceable by China Power.   The DHH Firm knew or should have known the management entrustment agreement was unenforceable.

68.    China Power and An Sen relied on this opinion and entered into the management entrustment agreement on the basis of this opinion.   China Power also made numerous representations as to the enforceability of the management entrustment agreement, including to the public and its shareholders.

69.    China Power and An Sen have been damaged as a result of the DHH Firm's negligence in that all of their assets have been depleted and/or stolen, and they are unable to recover them due to the unenforceability of the management entrustment agreement. Had China Power and An Sen known that the management entrustment agreement was unenforceable, they would not have entered into the management entrustment agreement or made representations about its enforceability.

## COUNT VI:  BREACH OF FIDUCIARY DUTY

### (China Power and An Sen against the DHH Firm)

70.    Plaintiffs incorporate ¶¶ 1-69 by reference.

71.     China Power and An Sen retained the DHH Firm to analyze the enforceability of the management entrustment agreement.  As a result of its relationship with China Power and An Sen, the DHH Firm owed China Power and An Sen a fiduciary duty. The DHH Firm provided China Power and An Sen with an opinion that the management entrustment agreement was enforceable by China Power.  This opinion was almost certainly false and the DHH Firm likely knew it.

72.     The DHH Firm breached its fiduciary duty to China Power and An Sen when it provided the opinion that the management entrustment agreement was enforceable by China Power.   The DHH Firm knew or should have known the management entrustment agreement was almost certainly unenforceable.

73.     China Power and An Sen relied on this opinion and entered into the management entrustment agreement on the basis of this opinion.  China Power also made numerous representations as to the enforceability of the management entrustment agreement, including to the public and its shareholders.

74.     China Power and An Sen have been damaged as a result of the DHH Firm's breach of its fiduciary duty in that all of its assets have been depleted and/or stolen, and they are unable to recover them due to the highly likely unenforceability of the management entrustment agreement.  Had China Power and An Sen known that the management entrustment agreement was unenforceable, they would not have entered into the management entrustment agreement.  China Power further would not have made statements in its financial reports that the agreement was enforceable.

75.     Because the DHH Firm breached its fiduciary duty, it should be required to disgorge any and all fees collected for the services that it purported to perform.

## COUNT VII:  AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

### (China Power against the DHH Firm)

76.     Plaintiffs incorporate ¶¶ 1-75 by reference.

77.     The DHH Firm assisted, aided and abetted the Officer and Director Defendants in the breaches of their fiduciary duties set forth above in Paragraphs 46-52. The Officer and Director Defendants each committed wrongful acts in participation in the breaches of fiduciary duty. The DHH Firm provided material support to the Officer and Director Defendants by providing China Power with an opinion that the management entrustment agreement was enforceable by China Power.   This opinion was almost certainly false and the DHH Firm likely knew it.

78.     The DHH Firm knew that the Officer and Director Defendants would use this opinion to cause China Power to enter into the management entrustment agreement. The DHH Firm further knew that China Power would repeat this opinion to its shareholders.

79.     The DHH Firm is liable for the wrongful conduct of the Officer and Director Defendants because of its role in aiding and abetting them in their breaches of fiduciary duties.

## CLAIMS AGAINST MAZARS AND CVB (THE "AUDITORS")

### COUNT VIII:  NEGLIGENCE/MALPRACTICE

### (China Power against the Auditors)

80.     Plaintiffs incorporate ¶¶ 1-79 by reference.

81.     China Power retained Mazars and CVB (hereinafter, collectively the "Auditors") to audit its financial reports.  As set forth above, the Auditors purported to audit China Power's financial reports and certified and verified that they were accurate. These certifications/verifications were false.  Upon information and belief, the Auditors never performed an audit of China Power that met applicable accounting standards. Moreover, they did not have a reasonable basis for their opinions because they did not plan and perform their audits of the financial statements in accordance with the standards of the Public Company Accounting Oversight Board (United States).

82.     The Auditors were negligent, failed to act as reasonably prudent auditing firms, and violated the applicable standards of care when they certified/verified China Power's financial statements and purported to audit China Power.  They knew or should have known that the information they were certifying/verifying was false and misleading. They knew or should have known that they failed to follow applicable accounting standards in conducting their audits.

83.     As a result of the Auditors' negligence, China Power issued financial reports that were false and misleading.   The Auditors' negligence also permitted the Officer and Director Defendants to abscond with China Power's assets without China

Power's knowledge.  China Power has been damaged by the Auditors' negligence, for which damages China Power sues.

## COUNT IX:  BREACH OF FIDUCIARY DUTY

### (China Power against the Auditors)

84.     Plaintiffs incorporate ¶¶ 1-83 by reference.

85.     China Power retained Mazars and CVB (hereinafter, collectively the "Auditors") to audit its financial reports.  As a result of this relationship, the Auditors owed China Power a fiduciary duty.  As set forth above, the Auditors purported to audit China Power's financial reports and certified and verified that they were accurate. These certifications/verifications were false.  Upon information and belief, the Auditors never performed an audit of China Power that met the standards of the Public Company Accounting Oversight Board (United States).

86.     The Auditors breached their fiduciary duties to China Power when they certified/verified China Power's financial statements and purported to audit China Power. They knew or should have known that the information they were certifying/verifying was false and misleading.   They knew or should have known that they failed to follow applicable accounting standards in conducting their audits.

87.     As a result of the Auditors' breach of fiduciary duty, China Power issued financial reports that were false and misleading.   The Auditors' breach of fiduciary duty also permitted the Officer and Director Defendants to abscond with China Power's assets

without China Power's knowledge.  China Power has been damaged by the Auditors' breach of fiduciary duty.

88.     Because the Auditors breached their fiduciary duty, they should be required to disgorge any and all fees collected for the services that they purported to perform.

## COUNT X:  AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

### (China Power against the Auditors)

89.     Plaintiffs incorporate ¶¶ 1-88 by reference.

90.     The Auditors assisted, aided and abetted the Officer and Director Defendants in the breaches of their fiduciary duties set forth above in Paragraphs 46-52.  The Officer and Director Defendants each committed wrongful acts in participation in the breaches of fiduciary duty.  The Auditors provided material support to the Officer and Director Defendants by purporting to audit China Power's financial reports and certifying and verifying that they were accurate. These certifications/verifications were false.  Upon information and belief, the Auditors never performed an audit of China Power that met the standards of the Public Company Accounting Oversight Board (United States).

91.     The Auditors knew or should have known that the Officer and Director Defendants would use these opinions and statements for their own benefit.  The auditors further knew that China Power would repeat these statements and opinions to its shareholders, who would rely on them.

92.     The Auditors are liable for the wrongful conduct of the Officer and Director Defendants because of their role in aiding and abetting them in their breaches of fiduciary

duties. Because of their aiding and abetting of the Officer and Director Defendants' breaches of fiduciary duty, the Auditors should be required to disgorge any and all fees which have been paid to them by China Power.

## CLAIMS AGAINST ZHONGXI

## COUNT NO. XI: BREACH OF CONTRACT

### (China Power and An Sen against Zhongxi)

93.    Plaintiffs incorporate ¶¶ 1-92 by reference.

94.    On November 8, 2006, An Sen entered into an irrevocable management entrustment agreement with Zhongxi pursuant to which An Sen had the right to manage and control Zhongxi and receive its financial benefits.   The manage entrustment agreement stated that An Sen shall be in charge of all aspects of Zhongxi's operations, An Sen shall nominate and replace the members of Zhongxi's board of directors, An Sen shall engage Zhongxi's management staff and decide their compensation, and An Sen shall manage and control all the funds of Zhongxi.  The agreement further provides that the accounts of Zhongxi shall be managed and decided by An Sen, the seals and signatures for accounts shall be the seals and signatures of the personnel appointed by An Sen, and all the matters of Zhongxi (including financial management, day-to-day operation, external contract execution and performance, tax filing and payment, change of rights and personnel) shall be controlled and managed by An Sen.  The management entrustment agreement also stated that Zhongxi shall pay its profit to An Sen.  It further stated that An Sen shall have the right to dispose of all the assets of Zhongxi without

prior consent and that An Sen shall be entitled to all of Zhongxi's income. The management entrustment agreement was irrevocable.

95.     Zhongxi has breached all of the aforementioned provisions of the management entrustment agreement by, among other things, failing to submit to An Sen's control, failing to pay its income to An Sen, refusing to respond to inquiries from An Sen and China Power, and withdrawing all of its assets to China and otherwise failing to turn over its assets to An Sen and China Power.  As a result, An Sen and China Power have been damaged in that they have been deprived of income and assets that belong to An Sen and China Power.  An Sen and China Power also hereby sue for all reasonable and necessary attorney fees and costs related to prosecuting Zhongxi for breach of contract.

## COUNT XII: FRAUDULENT INDUCEMENT

### (China Power and An Sen against Zhongxi)

96.     Plaintiffs incorporate ¶¶ 1-95 by reference.

97.     Zhongxi fraudulently induced An Sen and China Power to enter into the management entrustment agreement.  Specifically, Zhongxi represented (or commissioned the DHH Firm to falsely represent) to An Sen and China Power that the management entrustment agreement was enforceable.  An Sen and China Power relied on this representation in deciding to enter into the management entrustment agreement, and permitted Zhongxi to own, hold, and control assets that would have otherwise belonged to An Sen and China Power.

4570220_1

98.    An Sen and China Power have been damaged by this reliance in that they permitted Zhongxi to hold and control assets that otherwise belonged to An Sen and China Power.    An Sen and China Power have been damaged in that they have been deprived of income and assets that belong to An Sen and China Power.

## CLAIMS AGAINST OFSINK

### COUNT XIII:  NEGLIGENCE/MALPRACTICE

#### (China Power against Ofsink)

99.    Plaintiffs incorporate ¶¶ 1-98 by reference.

100.    China Power retained Ofsink to assist it, and provide legal advice in connection with securities that are at issue in this lawsuit.   In fact the offerings were nothing more than a fraudulent scheme by the Officer and Director Defendants to raise proceeds on behalf of China Power and then steal them from China Power.

101.    Ofsink was negligent, failed to act as a reasonably prudent lawyer, and violated the applicable standards of care when he assisted the Officer and Directors Defendants in carrying out their scheme.   Ofsink knew or should have known of the fraudulent purpose of the offerings.

102.    As a result of the Ofsink's negligence, China Power was damaged and the Officer and Director Defendants absconded with China Power's assets without China Power's knowledge.

## COUNT XIV:  BREACH OF FIDUCIARY DUTY

### (China Power against Ofsink)

103.    Plaintiffs incorporate ¶¶ 1-102 by reference.

104.    China Power retained Ofsink to assist it, and provide legal advice in connection with securities that are at issue in this lawsuit. As a result of this relationship, the Ofsink owed China Power a fiduciary duty.   In fact the offerings were nothing more than a fraudulent scheme by the Officer and Director Defendants to raise proceeds on behalf of China Power and then steal them from China Power.

105.    The Ofsink breached his fiduciary duties to China Power when he helped the Officer and Director Defendants carry out their scheme.  Ofsink knew or should have known of the fraudulent purpose of the offerings.

106.    As a result of Ofsink's breach of fiduciary duty, China Power was damaged and the Officer and Director Defendants absconded with China Power's assets without China Power's knowledge.

107.    Because the Ofsink breached its fiduciary duty, it should be required to disgorge any and all fees collected for the services that it purported to perform.

## COUNT XV:  AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

### (China Power against Ofsink)

108.    Plaintiffs incorporate ¶¶ 1-107 by reference.

109.    Ofsink assisted, aided, and abetted the Officer and Director Defendants in the breaches of their fiduciary duties set forth above in Paragraphs 46-52.  The Officer and

Director Defendants each committed wrongful acts in participation in the breaches of fiduciary duty. Ofsink provided material support to the Officer and Director Defendants by helping them carry out the offerings that are the subject of this complaint.

110.    Ofsink knew or should have known of the fraudulent purpose of the offerings.

111.    Ofsink is liable for the wrongful conduct of the Officer and Director Defendants because of their role in aiding and abetting them in their breaches of fiduciary duties. Because of his aiding and abetting of the Officer and Director Defendants' breaches of fiduciary duty, Ofsink should be required to disgorge any and all fees which have been paid to it by China Power.

## COUNT XVI: AIDING AND ABETTING SECURITIES FRAUD

### (Concorde against Ofsink)

112.    Plaintiffs incorporate ¶¶ 1-111 by reference.

113.    Ofsink assisted, aided and abetted the Officer and Director Defendants in the commission of securities fraud set forth above in Paragraphs 57-61. Ofsink committed wrongful acts in participation in the securities fraud. Ofsink provided material support to the Officer and Director Defendants by assisting them in carrying out the securities offerings and making them appear legitimate.

114.    Ofsink is liable for the wrongful conduct of the Officer and Director Defendants because of his role in aiding and abetting them in their commission of securities fraud.

32

## CLAIMS AGAINST CHRISTENSEN

### COUNT XVII:  NEGLIGENCE

**(China Power against Christensen)**

115.    Plaintiffs incorporate ¶¶ 1-114 by reference.

116.    China Power retained Chistensen to assist it in marketing the securities that are at issue in this lawsuit.  In fact the offerings were nothing more than a fraudulent scheme by the Officer and Director Defendants to raise proceeds on behalf of China Power and then steal them from China Power.

117.    Christensen was negligent, failed to act as a reasonably firm, and violated the applicable standards of care when it assisted the Officer and Directors Defendants in carrying out their scheme.  Christensen knew or should have known of the fraudulent purpose of the offerings.

118.    As a result of the Christensen's negligence, China Power was damaged and the Officer and Director Defendants absconded with China Power's assets without China Power's knowledge.

### COUNT XVIII:  AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

**(China Power against Christensen)**

119.    Plaintiffs incorporate ¶¶ 1-118 by reference.

120.    Christensen assisted, aided and abetted the Officer and Director Defendants in the breaches of their fiduciary duties set forth above in Paragraphs 46-52.  The Officer and Director Defendants each committed wrongful acts in participation in the breaches of

33

fiduciary duty.   Christensen provided material support to the Officer and Director Defendants by helping them carry out the offerings that are the subject of this complaint.

121.   Christensen knew or should have known of the fraudulent purpose of the offerings.

122.   Christensen is liable for the wrongful conduct of the Officer and Director Defendants because of their role in aiding and abetting them in their breaches of fiduciary duties.   Because of their aiding and abetting of the Officer and Director Defendants' breaches of fiduciary duty, the Christensen should be required to disgorge any and all fees which have been paid to it by China Power.

## COUNT XIX: AIDING AND ABETTING SECURITIES FRAUD

### (Concorde against Christensen)

123.   Plaintiffs incorporate ¶¶ 1-122 by reference.

124.   Christensen assisted, aided and abetted the Officer and Director Defendants in the commission of securities fraud set forth above in Paragraphs 57-61.   Christensen committed wrongful acts in participation in the securities fraud.   Christensen provided material support to the Officer and Director Defendants by assisting them in carrying out the securities offerings and making them appear legitimate.

125.   Christensen is liable for the wrongful conduct of the Officer and Director Defendants because of its role in aiding and abetting them in their commission of securities fraud.

4570220_1

## CLAIMS AGAINST ALL DEFENDANTS

## COUNT XX:  CIVIL CONSPIRACY

### (China Power and An Sen against All Defendants)

126.    Plaintiffs incorporate ¶¶ 1-123 by reference.

127.    Defendants engaged in a civil conspiracy with each other to steal the assets of China Power and An Sen and to breach their fiduciary duties to China Power.  The Officer and Director Defendants have stolen and/or converted for their own personal use all of the assets of China Power by misappropriating the assets of Zhongxi, which belong to China Power and An Sen.  Defendants have also caused China Power to issue false and misleading financial statements in order to hide their theft.   Defendants had an agreement or understanding to accomplish an unlawful act and to use unlawful means to accomplish an unlawful act.

128.    China Power and An Sen have suffered damages in that they have been deprived of all their assets by the Defendants' wrongful conspiracy.   All of the Defendants are jointly and severally liable for the damages resulting from the conspiracy. Because of their participation in the wrongful conspiracy described herein, all of the Defendants should be required to disgorge any fees, monies, salaries or bonuses received from China Power or An Sen.

129.    Plaintiff China Power hereby seeks all assets, including all assets reported in its financial reports, of which it has been deprived as a result of Defendants' wrongful conduct.

4570220_1

130.   Because the conduct of Defendants was intentional, reckless, committed with malice or was grossly negligent, Plaintiffs also sue for exemplary and punitive damages.

## DISCOVERY RULE

131.   Plaintiffs hereby plead the applicability of the discovery rule.  Plaintiffs were not put on notice of the tortious conduct at issue in this Complaint, nor would the circumstances cause a reasonable person to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the alleged tortious conduct, until, at the earliest, the time that Defendants refused to conduct a shareholders' meeting in response to shareholders' demands for same.

## JURY DEMAND

65.   Plaintiffs hereby assert their right to a trial by jury.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer herein, and that upon trial hereof, have judgment against Defendants for the damages alleged herein and for relief pursuant to the causes of action set forth in this complaint, including without limitation as follows:

A.   Judgment in an amount in excess of $75,000 for all damages caused by Defendants' wrongful conduct;

4570220_1

B.    Disgorgement of and judgment for all ill-gotten gains, payments, revenues, profits, fees and commissions flowing from or related to the conduct described in this complaint;

C.    A full accounting of the location and/or disposition of China Power's, An Sen's, and Zhongxi's assets;

D.    Exemplary/punitive damages against the Officer and Director Defendants and in favor of Plaintiffs;

E.    Attorneys' fees, costs of suit and expenses as provided under applicable law; and

F.    Such other and further relief, in law or in equity, as the Plaintiffs may be entitled.

Dated this the 2d day of May, 2016.

Respectfully submitted,


STEIN SPERLING BENNETT
DE JONG DRISCOLL PC


By:    _____/s/_____
       Jeffrey M. Schwaber (06095)
       Deanna L. Peters (15674)
       25 West Middle Lane
       Rockville, Maryland 20850
       301-340-2020
       301-354-8131 (fax)
       jschwaber@steinsperling.com
       dpeters@steinsperling.com

       *Attorneys for Plaintiffs*